JEFFERSON McCAULEY, Appellant, v. DAVID McKEIG, Respondent.

Water and Water Rights—*Placer mining—Injunctions denied—Nominal damages—General verdict in equity suit.* —The plaintiff's action was for damages, and to enjoin the defendant from diverting water, and allowing the tailings of a placer mine to run into his irrigating ditch, and upon his land. A jury in the case returned a general verdict and special findings. The latter were adopted and approved by the trial judge, and the plaintiff appealed from an order denying a motion for a new trial, and a judgment for costs. The special findings were substantially as follows: That the defendant had appropriated the water in dispute for placer mining, prior to the plaintiff's appropriation of the same for irrigating his land—had constantly used the same for placer mining in a manner occasioning no greater loss of the said water, or more excessive running of tailings, than was incidental to such mining operation, and had never injured the plaintiff thereby — and that in 1886, the year complained of, while plaintiff's ditch was filled, and his land was encumbered with tailings and sand, this was due only in part to the placer mining of the defendant. There was evidence tending to establish all the facts so found. *Held*, that the injunctions prayed for were properly refused, and that no reason existed for sending the case back to the lower court, merely to direct a judgment of one cent in favor of the plaintiff, when he had failed to establish his right to an injunction. *Held, also*, that no injury could have resulted to the plaintiff by the return of the general verdict, inasmuch as the special findings also made by the jury had been adopted by the trial judge in aid of his conscience as chancellor.

Same — Same —*Abandonment.* —The evidence in a case involving the right to use certain water showed that the defendant had appropriated the same for placer mining purposes in 1869, and that in 1872 the plaintiff had appropriated the same for irrigating his land ; that during the years 1878, 1879, 1880, 1882, and 1883, the defendant had not used the said water, but that in certain of said years the supply was not sufficient for placer mining operations. *Held*, that there had been no abandonment by the defendant of his prior right to the use of said water.

Mines and Minerals— *Working of placer mines—Injunction.* — On the appeal of an action which sought to restrain the defendant, the prior appropriator of a water right, from working a placer mine, so that the tailings therefrom filled the plaintiff's irrigating ditch, and were deposited on his land, the court said : " We are not to be understood as declaring that the owner of a placer mine may disregard the rights of others owning property adjacent to his. But the public policy of this Territory demands that a trifling or nominal damage shall not be a ground sufficient to destroy one of its leading industries. The laws of the United States, from which power the plaintiff obtains his right, granted to the defendant the right to use the water for placer mining purposes ; and we think we have no power to deprive him of that right by enjoining him from doing that which is a necessary incident to the enjoyment thereof; certainly not at the request of one who is a subsequent purchaser from a common grantor. (*Atchison* v. *Peterson*, 20 Wall. 507, cited.)

*Appeal from the Second Judicial District, Silver Bow County.*

The facts sufficiently appear in the opinion.

*Knowles & Forbis,* for Appellant.

The general verdict was rendered at the request of the court. The action is to abate two nuisances. This is the nature of the action. (*Parke* v. *Kilham*, 8 Cal. 78; 68 Am. Dec. 310; *Toulumne Water Co.* v. *Chapman*, 8 Cal. 392; *Fabian* v. *Collins*, 3 Mont. 224; *Grigsby* v. *Clear Lake Water Co.* 40 Cal. 397; *Courtwright* v. *Bear R. & A. W. & M. Co.* 30 Cal. 576; *Blanc* v. *Klumpke*, 29 Cal. 157; Comp. Stats. Mont. p. 159, § 361.) An action to abate a nuisance is an action in equity. (*People* v. *Moore*, 29 Cal. 428; *Courtwright* v. *Bear R. & A. W. & M. Co.* 30 Cal. 577; *Learned* v. *Castle*, 67 Cal. 41.) The general verdict in this case, then, was a nullity. (*Learned* v. *Castle*, 67 Cal. 41; *Wingate* v *Ferris*, 50 Cal. 105; *Brandt* v. *Wheaton*, 52 Cal. 430; *Gallagher* v. *Basey*, 1 Mont. 457; *Basey* v. *Gallagher*, 20 Wall. 670.) The requirement of a general verdict in such a case was calculated to mislead the jury, and to influence and confuse them in determining the special issues presented. The instructions in the case could apply only to this general verdict. They were, then, given to the jury upon an issue not fairly in the case, one which the jury were not required to find, and were calculated also to confuse the jury. In fact, this was an equity case, which was tried as an action at law, or at best, both as an action at law and as an equity case. Such a confusion is not calculated to facilitate the arriving at just conclusions. The jury found that the ditch of plaintiff was partly filled up, and that the tailings and gravel deposited upon plaintiff's land were partly from the mining operations of defendant. The sixth interrogatory propounded to the jury by the plaintiff was this: "Did the tailings and debris from the placer mines of the defendant, McKeig, in Soap Gulch, in the year 1886, run down into and upon the ditches and land of the plaintiff, McCauley?" Answer. "Yes; some of them." In the next finding, the jury find, that notwithstanding this, the plaintiff was not damaged by the flowing down of these tailings. Now, under such circumstances, the law implies damages (Wood on Nuisance, p. 1001; Sutherland on Damages, pp. 9, 10, 11); and the finding of even nominal damages is material in the case of a nuisance. (Wood on Nuisance, 894, 895, 896.) The jury found that McCauley owned the land upon which these tailings were deposited. And they further found that the defendant, McKeig,

had acquired no prescriptive right to deposit tailings upon plaintiff's ground. Under these circumstances the court certainly erred in approving of the findings of the jury. There is no reason for the court adopting the finding, that the plaintiff was not damaged. There were tailings run down upon his grounds, according to the findings of the jury. The plaintiff owned this ground, and the defendant had no right to deposit tailings thereon. For these errors we think a new trial should be granted in this case.

*W. W. Dixon*, for Respondent.

It may be admitted that the object of this action is to abate nuisances. And so far as it relates to enjoining the continuance of nuisances, it is an action in equity; but so far as it relates to the recovery of damages for nuisances, it is an action at law, and on the question of damages, either party had a right to a trial by jury, and a general verdict was proper. (*Fabian* v. *Collins*, 3 Mont. 226; *Basey* v. *Gallagher*, 20 Wall. 680.) In the case at bar, plaintiff had his causes of action intermingled without any separation or distinction between his claim for damages and for equitable relief, and he cannot complain of a general verdict on the whole case. It is not denied here that in an equitable action the findings of the jury are merely advisory to the court, and that the court may adopt or reject them as it thinks right. And so, under our practice, where the special findings of a jury are inconsistent with the general verdict, the special findings control even in an action at law. (Comp. Stats. Mont. § 275, p. 128.) This is as far as any of the decisions cited by appellant go. They do not hold that a general verdict is a nullity. On the contrary, *Learned* v. *Castle*, 67 Cal. 41, seems to hold that a general verdict is proper, and covers all the issues in favor of the party for whom it is rendered. In the case at bar, the general verdict was proper and competent as to the question of damages, if for nothing else, and settled that issue in favor of the defendant. The special findings completely cover the case and all the issues, and show that plaintiff had no right which was infringed, and sustained no damage. If plaintiff was entitled to any damages, they could be only nominal. The right to the water has been established in the defendant, and

need not be again litigated. An injunction certainly could not lie. (*Atchison* v. *Peterson*, 20 Wall. 507.) The facts were found by the jury and approved by the court. That the appellate court will not set aside a verdict or finding, where the evidence is conflicting, is too well settled to require argument. The authorities are too numerous and uniform to require citation at length, and I refer only to the following: *Orr* v. *Haskell*, 2 Mont. 225; *Story* v. *Black*, 5 Mont. 26; 51 Am. Rep. 37; *Beck* v. *Beck*, 6 Mont. 285; Hayne on New Trial and Appeal, § 288; *Doe* v. *Vallejo*, 29 Cal. 386; *Kile* v. *Tubbs*, 32 Cal. 333.

BACH, J. —This is an action setting forth in one complaint two causes of action for two separate nuisances. The first is for the diversion of water from the ditch and land of plaintiff. The second is for running down tailings, sand, and dirt into plaintiff's ditch and upon his land. The prayer is for damages and for an injunction to abate both nuisances. The defendant denied all the allegations of the plaintiff's complaint, and set up title in himself to the water diverted, and also a right by prescription to run down tailings upon plaintiff's land.

The cause was tried with a jury. The jury returned a general verdict in favor of the defendant, and made special findings covering the issues in the case. The following summary of the special findings will present all the facts in issue: The defendant appropriated the waters of Soap Creek in controversy for the purposes of placer mining in 1869, and has never abandoned the same; the plaintiff did not appropriate or use said waters until 1872; the defendant has not used said waters since 1872 in any manner differing from his use of the same prior to that date; in 1886 (the year complained of) the defendant did not so use the water as to occasion any loss of water not incidental to his use of the same for placer mining purposes; during that time he did not so use the same as to cause it to carry down any more sand, gravel, sediment, or tailings than is usual from the use of water in placer mining; in 1886 plaintiff's ditch was filled up, and tailings, sand, and gravel were deposited on his land, which was partly caused by the mining operations of the defendant, resulting from the ordinary use of the water for placer mining; the plaintiff is the owner of the lands men-

tioned in the complaint, and in 1872 he appropriated said waters for irrigating the same; the use of the waters by defendant, as aforesaid, does not cause any injury to the lands or ditches of the plaintiff, or to the water used by him; and the plaintiff has acquired no right to said waters adverse to the right of defendant.

After the return of the general verdict and special findings, counsel for the defendant moved the court to approve and adopt the special findings, and to render judgment for defendant for costs. The court granted the motion, and judgment was ordered for defendant. A motion for a new trial was made and denied. The appeal is from the judgment and from the order denying a new trial. There are practically three demands made by plaintiff in his complaint: *First.* He asks that defendant be perpetually enjoined from diverting certain waters. *Second.* He asks that defendant be restrained from turning the tailings from his placer mines into the creek, and thereby causing them to run into plaintiff's ditch. *Third.* He asks for damages. The order denying the motion for a new trial may well be considered separately with each of these several demands.

As to the prayer that defendant be restrained from diverting the waters, there is evidence tending to show that the defendant was the first appropriator; that he has never abandoned his right; and that the plaintiff has established no right adverse to the defendant. The jury did find, it is true, that defendant did not use any of said waters during the years of 1878, 1879, 1880, 1882, and 1883. They did, however, find that he used said waters during the year 1881; and the testimony shows that there was not water enough to work mines during certain of the years mentioned. We do not think that those facts establish an abandonment by the plaintiff. The judgment of the court below denying the first relief demanded is fully sustained by the evidence.

As to the second demand: there is evidence tending to show that some of the sand, gravel, and tailings do run into the ditch and upon the land of the plaintiff; that this is not due to any cause not a necessary incident to the use of water in placer mining, and also that no damage results therefrom to the plaintiff. We are not to be understood as declaring that the owner of a placer mine may disregard the rights of others owning property

adjacent to his; but the public policy of this Territory demands that a trifling, a nominal damage, shall not be ground sufficient to destroy one of its leading industries.    The laws of the United States, from which power the plaintiff obtains his right, granted to defendant the right to use the water for placer mining purposes, and we think we have no power to deprive him of that right by enjoining him from doing that which is a necessary incident to the enjoyment thereof; certainly not at the request of one who is a subsequent purchaser from a common grantor.

We think the court below properly refused a restraining order upon these facts; and for authority we rely upon the case of *Atchison* v. *Peterson*, 20 Wall. 507.    That was an appeal from the Supreme Court of this Territory.    The plaintiff asked for an injunction against a subsequent appropriator, so that in that respect the case would present a stronger claim for injunction than does the case under consideration, in which it is a subsequent appropriator who seeks the remedy.    The court say: "But whether upon a petition or a bill asserting that his prior rights have been thus invaded, a court of equity will interfere to restrain the acts of the party complained of, will depend upon the character and extent of the injury alleged, whether it be irremediable in its nature, whether an action at law would afford adequate remedy, whether the parties are able to respond for the damages resulting from the injury, and other considerations which ordinarily govern a court of equity in the exercise of its preventive process of injunction."

As to the question of damages: it appears from the findings that the ditches of the plaintiff have been filled by sand and mud, part of which is due to the placer mining of defendant. The witnesses for plaintiff estimate the damage at sums varying from two hundred dollars to five hundred dollars.    They base their estimate upon the whole damage done.    The jury, on the other hand, declare that only part of this is caused by the mining operations of defendant, and then declare that no damage was caused thereby.    The plaintiff insists that he is entitled at least to nominal damage, and upon that ground also asks for a judgment of reversal.

It would seem to be the law that one who establishes a nuisance is entitled to nominal damages, at least; and then, in most cases,

an injunction follows to prevent future damage of the same nature. But the case of *Atchison* v. *Peterson*, already cited, declares that the injunction does not follow as a matter of right in cases like the present; and we can see no reason why this case should be sent to the court below merely to direct a judgment for one cent in favor of the plaintiff, for as to the other demands, we are of the opinion that the judgment of the court below is correct.

One more alleged error is much relied on by appellant, who claims that this is an equity case, and that the jury should not have been asked or allowed to return a general verdict, and cites as authority cases from the California Reports. The respondent, on the other hand, insists that there is a combination of a common-law action with a suit in equity, and that the question of damages was properly made the subject of a general verdict, and cites as authority *Basey* v. *Gallagher*, 20 Wall. 680. This might, perhaps, afford a subject for learned discussion; but surely it should not be allowed to disturb a solemn judgment. In what respect was the plaintiff injured by the return of a general verdict? The record shows that the jury did return special findings; that the judge below, sitting as an equity judge, did solemnly accept this formal aid to his conscience, and did approve of the special findings; and the record further shows that upon such acceptance and approval, judgment was entered in favor of the defendant.

The judgment and order appealed from are affirmed with costs.

*Judgment affirmed.*

McConnell, C. J., and De Wolfe, J., concur.