[Civ. No. 5043.   Second Appellate District, Division Two.—August 10, 1927.]

BERTIE H. GODFREY, Respondent, v. JOHN PHILLIPS GODFREY, Appellant.

Turnbull, Heffron & Kelly for Appellant.

Wm. J. Clark and Claude Morton for Respondent.

CRAIG, J.—The plaintiff and respondent instituted this proceeding for the recovery of a certain parcel of real property situated at Beverly Hills, in Los Angeles County, which she alleged that appellant had obtained from her by coercion, threats to impugn her character and chastity, duress, undue influence, and extortion.

The appellant and respondent intermarried on February 3, 1922, at which time the latter possessed and held in trust Liberty bonds of the value of fifteen thousand dollars, and other personal property belonging to her infant daughter, issue of a former marriage, named Ruth Meloy, and which were on deposit in a safe deposit box at the Los Angeles Trust & Savings Bank. On March 3, 1922, appellant purchased and caused to be conveyed to respondent the real property involved in this suit as a wedding present. Shortly thereafter appellant commenced, both personally and through friends and relatives of the respondent, a persistent course of urging and persuasion to induce Mrs. Godfrey to deliver the Liberty bonds to him for investment, which she repeatedly refused to do. Appellant then prevailed upon his wife to share with him the use of her safe deposit box, for which purpose she permitted him to register at the bank, but retained the key, which she concealed in a portfolio at home. On or about April 19, 1922, appellant surreptitiously abstracted the key from the portfolio, without the knowledge or consent of respondent, proceeded to the bank and withdrew the Liberty bonds, which he delivered to and listed

in his own name with a firm of stock and bond brokers, with instructions to sell them and to pay the proceeds to himself. Upon discovering the fact that the Liberty bonds of her daughter were missing, respondent accused Godfrey of having stolen them, which he at first denied, but finally admitted, stating that he would not relinquish them unless respondent would deed to him the real property above mentioned. Respondent caused Godfrey's arrest, and filed an action in replevin for recovery of the securities; upon his release from custody appellant apparently pursued a relentless campaign of argument, harassment, and threats that he would make respondent trouble unless she should consent to deed him the realty. Mrs. Godfrey testified at the trial that from the day that appellant obtained the bonds until the commencement of this suit, and thereafter, he constantly coaxed, nagged, and tantalized her about a deed; that upon one occasion appellant admitted that he was aware of the fact that the Liberty bonds belonged to Ruth, but that he told her: "I have asked you for the house, and you wouldn't give it to me, and I have taken the bonds, and will give them back to Ruth as soon as you deed the house over to me"; that he stated to the brokers: "I know. they are her daughter's bonds, but she has a piece of property of mine, and when she deeds the property back to me, I will return the bonds." It appears that during all of this controversy the respondent was believed to be expecting an heir, and she alleged in her complaint, and testified, that following a protracted course of such attacks, appellant asked her in the presence of a witness, who corroborated much of her testimony, if she had "had enough of it," if she was "ready to sign over the deed," and that when refused again, Godfrey said: "Well, then we will have a little more." "You will either deed over that house to me, or I will cause you a lot of trouble; I will simply say that I am not the father of this child that you are expecting; and besides. you won't get the bonds until you deed over the house." The voluminous record before us teems with such unconscionable statements, demands, and threats, and it appears that this incessant embarrassment and menace ultimately resulted in a physical and mental breakdown, which Mrs. Godfrey believed would cost her life and that of her unborn child. She and other witnesses testified that on April 29, 1922, respondent visited her attorney; that she was then in a highly nervous and

distracted condition, and stated that she could no longer bear the anxiety, oppression, and fear of being accused of infidelity, and that she felt compelled to convey the property to Godfrey in order to protect Ruth's securities, and to save her life and that of her expected child. Her counsel swore that "she was crying; tears were running down her face; she stated that the controversy with her husband was killing her; that if it was not stopped immediately she would not live." Finally, having concluded that she must submit to appellant's demands, though acting contrary to the advice of her counsel, respondent executed a deed to the stenographer in her attorney's office, who in turn deeded the property to Godfrey, the bonds were returned and the replevin suit was dismissed.

The trial court rendered judgment herein for the plaintiff and the defendant appealed. It is insisted that the return of the Liberty bonds, conveyance of the real property and dismissal of the replevin suit was a legitimate compromise of pending litigation, and that it constituted a contract between the parties; that the evidence does not tend to show such a degree of duress as would entitle the plaintiff to rescind, and hence that the judgment should be reversed. Appellant cites but a few authorities, none of which is applicable to the case at bar. He seeks to rely upon subdivision 2 of section 1569 of the Civil Code, which defines duress as the unlawful detention of the property of a person illegally restrained, and *Standard Box Co.* v. *Mutual Biscuit Co.*, 10 Cal. App. 746 [103 Pac. 938], holding that a mere threat to withhold a legal right which one may legally enforce does not constitute duress. It is true that the acts of appellant did not consist of duress as defined by the section of the Civil Code cited in his brief, nor was the clandestine abstraction of the bonds and offering them for sale a mere threat to withhold them. But this is unimportant, for although the term "duress" was incidentally pleaded as a ground for recovery by the plaintiff and respondent, it was also alleged, the evidence strongly indicated, and the trial court found, that appellant's acquisition and retention of the Liberty bonds was unlawful and indefensible, and that he obtained a mere record title to the realty by threats, undue influence, and extortion, and hence without consideration; from which it results that had the technical term "duress" been entirely omitted from the

pleadings, plaintiff's prayer that the deed be set aside entitled her to recover. The finding below reads as follows:

"That no benefit was conferred or agreed to be conferred upon the plaintiff to which the plaintiff was not lawfully entitled by reason of said deed, nor was any prejudice suffered or agreed to be suffered by said defendant other than such as he at the time was lawfully bound to suffer. That plaintiff did not receive any consideration or anything of value by reason of her said deed to Marion G. Wilson, and that there was not any consideration whatever for said deed. That said deed was not the free and voluntary act of plaintiff, but was extorted from plaintiff by defendant by the said threats and statements of defendant, and was executed by her under fear of the same. That said plaintiff would not have executed said deed to defendant, excepting for said acts, threats, and statements of defendant."

Appellant denied both in his answer and upon the stand the essential allegations and testimony of respondent upon this issue, but the trial court found, and we think justly, that there was no consideration for the conveyance of the real property to him, and it is not within the province of this court to question a finding and judgment founded upon conflicting evidence. It is asserted in appellant's brief that the respondent was guilty of laches in delaying nine months to commence this action, but laches was not an issue at the trial, and cannot be raised for the first time on appeal. (*Parkside Realty Co.* v. *MacDonald,* 166 Cal. 426 [137 Pac. 21].)

It is contended that evidence of the contents of the answer filed by appellant in the civil suit brought by respondent to secure the return of her daughter's bonds was improperly refused admission in this case. The reason assigned for this claim is that the answer would have shown the contention of appellant in the former action, and that this would have established that respondent, through her attorney, had knowledge of such claim, and that proof of such contention and of respondent's knowledge thereof would have tended to show that in the settlement of the former suit appellant relinquished a right which constituted consideration for the settlement between the parties. The mere statement of this argument is sufficient to show its utter lack of logic. It is surely a novel suggestion that one who, with-

out the slightest interest in personal property of another takes and withholds it, may make its restoration a legal consideration for a contract by which a third person parts with other property to the thief. This, of course, would merely legalize extortion. If such a transaction cannot be recognized in law, the mere fact that appellant, who, without right, took the personal property of respondent's child, afterward had the assurance and brazonry to make a claim of ownership thereof in a legal proceeding surely cannot create a consideration where none existed.

No other points are presented which require discussion. The judgment is affirmed.

Works, J., and Thompson, J., concurred.