HEWITT, Respondent, v. NOVAK, et al., Appellants.

No. 8590

Submitted April 4, 1945. Decided May 15, 1945.

158 Pac. (2d) 627

Mr. Mark H. Derr, of Polson, for appellants.

Mr. T. R. Delaney, of Polson, for respondent.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

This action was brought to recover upon a promissory note, dated August 9, 1939, and payable on or before three years after date, in the sum of $400, executed and delivered by defendants and made payable to Louise Hewitt, the wife of plaintiff. Prior to the commencement of the action the note was transferred by Louise Hewitt to plaintiff, who had full knowledge of all the circumstances under which the note was executed. The defendants by answer allege that the note was executed without consideration in that it was given pursuant to an agreement whereby Louise Hewitt was to yield possession of certain described lands on or before the 10th day of September, 1939, and that possession was not in fact surrendered until about the 20th day of October, 1939.

At the conclusion of all the evidence in the case the court

granted plaintiff's motion for a directed verdict in his favor upon which judgment was entered and this appeal taken.

In view of the fact that the court took the case from the ■ jury it becomes necessary to review the evidence and thus ascertain whether there was any issue in the case that should have been submitted to the jury. The salient facts developed at the trial were these: Louise Hewitt had entered into a written contract on the 19th day of October, 1935, with the Vermont Loan & Trust Company, whereby she purchased from the trust company certain described real estate for the sum of $2500. She paid $600 down at the time of entering into the contract and agreed to pay $320 on the first day of October 1936 and a like sum on the 1st day of October of each year thereafter until the full purchase price of $2500 was paid. In addition to paying $600 at the time of making the contract, Louise Hewitt paid the sum of $368.30 on October 29, 1936, and has paid nothing since.

Time was made of the essence of the contract. It provided that failure of the vendee to make any payment shall "at the option of the vendor, work a complete forfeiture to vendor of all money paid on account of this contract, * * *

"It is further agreed, that upon the forfeiture of this contract for any cause, vendee shall immediately thereupon quit and surrender up to vendor, without demand, peaceable possession of said premises * * *, and in case vendee neglects or refuses to surrender up such possession, it shall be lawful for vendor to enter upon and take possession of said premises, without notice, and remove all persons and their property therefrom and it shall not be liable therefor."

On the 18th day of April, 1939, the Vermont Loan & Trust Company gave written notice to the Hewitts that they were in default and "that unless said past due payments and all of them are made within 30 days from the receipt of this notice said contract will be forfeited; and in the event of your failure to make said past due payments and all of them within 30 days from receipt of this notice, demand is hereby made for

return of the possession of said premises and that you quit and vacate the same on or before 30 days from receipt of this notice in order that the Vermont Loan & Trust Company may take possession thereof.''

Before the expiration of the 30-day period named in the notice of cancellation, the Hewitts went to Missoula to interview Mr. P. L. Larsen, the agent of the Vermont Loan & Trust Company who sold the property to the Hewitts and asked him for time to get a buyer for their equity in the place. Mr. Larsen said, ''I told them I would take it up with the Vermont Loan, that I was sure it was all right.'' He further said ''Q. Did you get permission to make such a deal? A. Yes, sir.''

Pursuant to this permission the Hewitts interested Mr. Novak in buying the property. Mr. and Mrs. Novak, Mr. and Mrs. Hewitt and the witness Larsen met in Mr. Marcy's office when the note involved in this action was executed. Mr. Larsen testified without objection: ''This was given for Mr. Hewitt's equity, that was all there was to it.'' At the time the $400 note was executed the Novaks entered into an agreement with the Vermont Loan & Trust Company, agreeing to pay that company the sum of $2300 for the property which had theretofore been sold to the Hewitts. As above stated the Hewitts are the ones who found the purchaser, Mr. Novak, and told Larsen about it. Mr. Larsen stated that Mr. Crommelin, the vice president of the company, said he would like to see the Hewitts get something out of the place because they had made a good down payment.

At the time the note was executed Louise Hewitt signed the following agreement:

''Agreement to give Possession of real estate at stated date.

''In consideration of the sum of $400.00 to me in hand paid, I, Louise Hewitt, do hereby agree and by these presents do hereby release to Joe Novak, all my right title whatsoever, to the possession or use of the following described land viz, [here followed description which is the same property as that cov-

ered by the contract of sale between the Vermont Loan & Trust Company and defendants.]

"I also hereby agree to give to Joe Novak full and unqualified possession to the said land on or before the 10th day of September, 1939."

It is conceded that the Hewitts did not surrender possession of the property until the 20th day of October, 1939, but gave this explanation for not doing so: Being unable to find another place on which to move, they decided to dispose of their livestock and machinery at public auction and were unable to secure the services of an auctioneer until on or about the 17th day of October, and three days after the auction sale had been held they surrendered possession of the property. Mrs. Hewitt testified that she consulted with defendants before the expiration of the time when she should have surrendered possession under her agreement and advised them of the difficulty in procuring the services of the auctioneer and that because thereof they would be late in vacating the premises, and that this was entirely agreeable to the defendants. This was denied by Mrs. Novak.

Defendants contend that this issue on this conflicting evidence became one of fact for the jury. Their argument is predicated upon the assumption that the only consideration for the note was the agreement to surrender possession of the property on or before September 10th. The written agreement contemplated more than a mere surrender of possession at a specified date. For the $400 note Mrs. Hewitt agreed to release to Joe Novak "all my right title whatsoever, to the possession or use" of the described land and also to yield possession on or before September 10th. The rule is well established that the promise to do what a person is already obligated by law or contract to do is not sufficient consideration for a promise made in return. 17 C. J. S., Contracts, secs. 111 and 112, pp. 464, 465; 12 Am. Jr., Contracts, sec. 88, p. 582; Williston on Contracts, sec. 132.

Pursuant to this principle of law it is well established that

an agreement to surrender possession of property which the promisor is already under legal obligation to surrender is not sufficient consideration to support a promise. Erny v. Sauer, 234 Pa. 330, 83 A. 205, Ann. Cas. 1913C, 1241; Home Owners Loan Corporation v. Thornburgh, 187 Okl. 699, 106 Pac. (2d) 511; Wendover v. Baker, 121 Mo. 273, 25 S. W. 918; Warren Tank Car Co. v. Dodson, 330 Pa. 281, 199 A. 139; Boerger v. Vandegrift, Tex. Civ. App., 188 S. W. 948; Lynch v. Sable-Oberteuffer-Peterson, 122 Or. 597, 260 Pac. 222, 55 A. L. R. 180; Godfrey v. Godfrey, 85 Cal. App. 46, 258 Pac. 705; Tolhurst v. Powers, 133 N. Y. 460, 31 N. E. 326; Fink v. Smith, 170 Pa. 124, 32 A. 566, 50 Am. St. Rep. 750; Boston v. Lodge, 1 Blackf., Ind. 19, 12 Am. Dec. 205.

If, therefore, the Hewitts were already under obligation to surrender the possession of the property defendants' contention would be meritorious. But the obligation of the Hewitts to surrender possession depended upon the attitude of the Vermont Loan & Trust Company. While that company had given notice of cancellation, it was entirely competent for it to waive the right to stand upon the forfeiture clause of its contract and upon the cancellation notice, in which case the Hewitts would have the right to retain possession and use and a sufficient right or equity to form the consideration for an agreement. Rogers Development Co. v. Southern California Real Estate Inv. Co., 159 Cal. 735, 115 Pac. 934, 35 L. R. A., N. S., 543. The evidence warrants the conclusion that the Vermont Loan & Trust Company waived the forfeiture provision of its contract, and waived the right to stand upon its cancellation notice. While it gave notice of forfeiture to the Hewitts, yet the evidence shows that it thereafter gave permission to the Hewitts to endeavor to protect their equity by finding a purchaser which they did.

The Vermont Loan & Trust Company through its vice president expressed a desire that the Hewitts salvage something out of the down payment made by them. The reasonable inference is that the price fixed by the trust company to defendants

was reduced below that which the Hewitts contracted to pay out of consideration of the fact that the defendants were to pay the Hewitts $400 as evidenced by the note. We hold there was sufficient consideration for the note. Did the delay in surrendering possession of the property affect defendants' obligation on the note? The evidence shows that defendants did not desire to, and did not in fact move into the buildings on the property. They submitted some evidence in support of an affirmative defense pleaded that they would have done some fall plowing had the Hewitts vacated the property on time. The evidence shows there was nothing to prevent them from doing the plowing if they so desired. Defendants also introduced evidence in support of another affirmative defense to the effect that they had a chance to sell the property to their hired man at a $1500 profit had they been able to deliver possession at the time when the Hewitts agreed to surrender possession. The evidence was unsatisfactory as to the financial ability of the hired man to meet the obligation of such a contract. In any event, the Hewitts were not notified of this opportunity on the part of defendants to sell, no demand was made upon them for possession in order to comply with such a contemplated sale, and no complaint was made to them of the delay in yielding possession of the property until demand was made upon defendants for payment of the note some three years after possession was surrendered. Had defendants desired possession sooner they could and should have called upon the Vermont Loan & Trust Company to obtain possession but this they did not do.

From all the evidence in the case, it is our conclusion that ▮ the delay of the Hewitts in surrendering possession was but a technical breach of one of the elements going to make up the consideration for the note. This delay did not entitle defendants to more than nominal damages as a set-off on the note. It constituted no complete defense to the note. While the lower court might with propriety have submitted the case to the jury to fix nominal damages sustained by defendants

because of the delay in surrendering possession to be allowed as a set-off, the rule is well settled in this jurisdiction that this court will not reverse a case and order a new trial in order that nominal damages only may be awarded. Pioneer Mining Co. v. Bannack Gold Mining Co., 60 Mont. 254, 198 Pac. 748; McCauley v. McKeig, 8 Mont. 389, 21 Pac. 22; Robb v. Porter, 65 Mont. 460, 211 Pac. 210.

The judgment is affirmed.

Mr. Chief Justice Johnson, and Associate Justices Morris, Adair, and Cheadle, concur.