277 P.2d 306

In the Matter of the Last WILL and Testament and Estate of Leland M. QUANTIUS, Deceased.

Carmen Shirk O'BRIEN, a minor, by Paul W. Eaton, Jr., her next friend, Claimant-Appellant,

v.

Marie B. QUANTIUS, Executrix, Appellee. No. 5719.

Supreme Court of New Mexico.

Nov. 29, 1954.

Carpenter, Eaton & Phelps, Roswell, for appellant.

Frazier & Cusack, Roswell, for appellee.

FOWLER, District Judge.

This appeal is from a judgment of the District Court denying a claim of Carmen Shirk O'Brien made against the estate of Leland M. Quantius, deceased, for damages declared as sustained through decedent's breach of his contract to maintain her as the beneficiary named in an insurance policy on his life.

The facts, including certain exhibits, were stipulated and from these the court made findings of fact and conclusions of law. Because these picture the case so well, these are set forth here so far as they are pertinent to this appeal. But that the broad sweep of some of these findings and conclusions may be better understood, we explain that another claim was filed and heard along with the one here under consideration; that it was a claim for support money alleged due from the decedent under the Kansas decree mentioned; that it was denied also, and that appeal was taken as to both claims, and both were argued in appellants' brief-in-chief and in the answer brief; but now, by concession made in the reply brief, the appeal as to said support money claim is abandoned.

"Findings of Fact

"1. That Leland M. Quantius and his former wife, now Betty Shirk O'Brien, were married February 5, 1935, and one child, Carmen Quantius, was born of this union on October 1, 1937.

"2. That on March 20, 1939, the decedent Leland M. Quantius and his former wife, now Betty Shirk O'Brien, entered into a 'Separation Agreement' in part providing that the decedent 'Shall pay to Betty Quantius for the support of the child the sum of $25.00 per month, payments to begin on the 1st day of April, 1939,' and further providing that decedent 'shall make a provision in the insurance contract held by him payable to Carmen Quantius in the event of the death of said Leland Quantius, so that said beneficiary may not be altered; it is also agreed that said policy may not be allowed to lapse or become void.'

"3. That on April 1, 1939, the decedent and his former wife, now Betty Shirk O'Brien, were divorced by Decree entered in the District Court of Wyandotte County, Kansas; that under said divorce decree Betty Shirk O'Brien was awarded the care,

custody and control of the minor child, Carmen Quantius, and the decedent was ordered to 'Give to the defendant for the support of the minor child Carmen Quantius, the sum : $25.00 each month, beginning on the 1st day of April, 1939, which said payments shall continue until the further order of the court in the premises.' By said Decree the decedent was further ordered to 'keep and maintain the insurance contract now held by him and naming the said minor child, Carmen Quantius, as beneficiary and that the plaintiff shall take whatever steps may be necessary to provide in said insurance contract that the name of the beneficiary shall not be changed and it is ordered, adjudged and decreed that the said plaintiff shall not allow the said contract to lapse or become void through any act or omission on his part.'

"4. That the decedent made certain payments for child support and also for alimony as provided by the divorce decree and separation agreement and, according to the official records of the Clerk of said Court the sum of $373.12 was paid for child support, beginning with April 1, 1939 and ending July 16, 1941 which paid in full for the period beginning April 1, 1939, and ending June 8, 1940. That a total of 160 months and 28 days elapsed between the date of the Decree and the death of the decedent.

"5. That on or about June 8, 1940, Mary Gertrude McCourt Shirk filed a Petition for Adoption of said child in the Probate Court of McPherson County, Kansas, and in said Petition alleged that the Petitioner 'is possessed of sufficient means and ability to bring up and educate said child properly and her financial worth is in excess of the sum of $50,000.00.' That the decedent, as well as the mother of said child filed their written consent to such adoption and the decedent in his consent stated: 'It being fully understood by me I am relinquishing all my right to custody, control, services and earning of said child, and that I cannot later reclaim her.' That on July 9, 1940 an interlocutory decree of adoption was entered in said court and on January 21, 1941 a final decree of adoption was entered in said Court. That the name of the child was changed to Carmen Shirk.

"6. That by adoption proceedings regularly conducted in the Probate Court of McPherson County, Kansas, the said child was on June 14, 1943 adopted by her natural mother, Betty Shirk O'Brien, and her stepfather, Walter E. O'Brien and her name changed to Carmen Shirk O'Brien. That by reason of the previous adoption the consent of the decedent to such adoption was not secured and the petitioners in such proceeding stated that they were so situated as to bring up and educate said child properly.

"7. That Section 175 of Chapter 180 of the Laws of 1939 of the State of Kansas being Sec. 59-2103, General Statutes of Kansas, 1949, which was in effect at the

time of said adoption and since then is as follows:

"'Effect of adoption. Any child adopted as herein provided shall assume the surname of the person by whom a child is adopted, and shall be entitled to the same rights of person and property as a natural child of the person thus adopting the child. The person so adopting such child shall be entitled to exercise all the rights of a natural parent and be subject to all the liabilities of that relation. Upon such adoption all the rights of natural parents to the adopted child, including their right to inherit from such child, shall cease, except the rights of a natural parent who is the spouse of the adopting parent.'

"8. That on July 18, 1940, at Roswell, New Mexico, the decedent was married to his widow, Marie B. Quantius, and a daughter, Mary Lucena Quantius, was born to this union on August 3, 1941.

"9. That the life insurance policy referred to in said separation agreement and in said divorce decree was No. 1310848, issued July 25, 1938 by the Union Central Life Insurance Company, Cincinnati, Ohio, for the principal amount of $8,000.00. That decedent retained said policy in his possession and on August 16, 1941, he changed the beneficiary in said policy from Carmen Quantius to Mary Lucena Quantius, his daughter, which change of beneficiary was duly approved by the company in accordance with the policy provisions. That during his lifetime the decedent borrowed the sum of $355.39 against the policy, and at his death there was payable to the named beneficiary the sum of $7,596.03. That payments on the policy are being made to Marie B. Quantius as trustee at the rate of $25.00 per month until said child attains the age of 14 years, whereupon payments are to be made at $50.00 per month until she is 18 years of age, then from 18 to 22 payments are to be made at the rate of $100.00 per month, and at the age of 22 years the balance is due and payable. That the proceeds of said policy are not a part of the estate of the decedent.

"10. That a total of 15 premium payments in the amount of 93.19 each were made on the policy. That the last 13 payments were made while the decedent was married to Marie B. Quantius and from community funds.

"11. That Sec. 60–1510, General Statutes of Kansas, 1949, provides:

"'Provision for minor children. When a divorce is granted the court shall make provision for the guardianship, custody, support and education of the minor children of the marriage, and may modify or change any order in this respect whenever circumstances render such change proper.'

That the divorce decree was never modified, and nothing was filed in said cause after

April 1, 1939; that no proceedings were instituted in Kansas to collect any past due installments.

"13. That sometime prior to June 7, 1939, the decedent became a resident of the State of New Mexico, and on June 7, 1939, at Roswell, New Mexico, he executed an agreement with the said Union Central Life Insurance Company changing the contingent beneficiary in said policy from his former wife, Betty Quantius, now Betty Shirk O'Brien, to his parents Leland Quantius and Rachel Quantius, and further providing that his said parents should be trustees for his daughter, Carmen Quantius; that said Rachel Quantius survived the decedent.

"15. That nothing was done by Carmen Shirk O'Brien, or by anyone else, concerning the said insurance policy subsequent to April 1, 1939, asserting any right or interest in said policy in favor of Carmen Shirk O'Brien prior to filing of the claim herein; that no notice of change of beneficiary was given to her, or to anyone in her behalf, when the change of beneficiary was made from said Carmen Shirk O'Brien, then Carmen Quantius, to Mary Lucena Quantius.

"16. That the said insurance policy contains a provision permitting the decedent to change the beneficiary therein upon making application to the company.

"17. That Sec. 60-304-6 [Secs. 60-306, subd. 6, 60-322] of the General Statutes of Kansas provides that actions on judgments must be commenced within five years; that a judgment may be revived by action instituted within two years after it becomes dormant.

"Conclusions of Law

"1. That the agreement between the parents, dated March 20, 1939, was without consideration insofar as Claimant Carmen Quantius Shirk O'Brien is concerned.

"2. That the agreement dated March 20, 1939, became merged in the Kansas Divorce Decree rendered April 1, 1939; that the said Decree insofar as it affects the custody, support and education of the minor child is dormant under the laws of Kansas, and cannot be given force or effect in this State.

"4. That the agreement between the parents, and the Kansas Decree, intended that the insurance policy should be security or protection for claimant in the event decedent should die while it was still his duty to support and educate her, and that such obligation ceased upon her adoption by another.

"5. That no gift of the policy to Claimant Carmen Shirk O'Brien was made by decedent, and Claimant at no time acquired any vested rights in or to such policy.

"7. That the Kansas Court has power to modify its Decree with respect to all matters pertaining to the support, maintenance and education of Claimant Carmen Shirk O'Brien, except as to any past due and un-

paid support money, so long as the Decree did not become dormant, and neither the agreement nor the Decree can be enforced by this Court insofar as the insurance policy is concerned.

"8. That the contract, having been made in Kansas, must be construed as a Kansas contract; that under the laws of Kansas neither the contract nor the divorce decree could obligate the decedent for support after the child attained majority, or after her adoption by another.

"10. That the agreement between decedent and claimant Betty Shirk O'Brien, became merged in the Kansas Decree, and said agreement cannot be used as a basis of a claim in this State.

"16. That each of said claims should be denied at the cost of Claimants."

The findings are identical with the stipulation except that the latter had exhibits attached thereto and admitted, which were before the court for study in the making of conclusions.

Judgments denying the claims were entered; the appeal followed; now in this Court the claimant-appellant in the support money claim concedes the correctness of the judgment denying her claim.

The claimant-appellant Carmen Shirk O'Brien disavows reliance upon the divorce decree as the source of her claim and right, and declares that her action is based upon the decedent's breach of said agreement.

The appellee complains that in this said appellant has changed her position here from the contention made in her claim and in the court below. Examination of the claim as filed shows that it was based upon both the decree and the separation agreement, they being set up as several and alternative bases of her claim for damages growing out of decedent's failure to maintain her as the beneficiary under the life insurance policy. The stipulation presents the agreement in the case; this appellant requested findings and conclusions of law clearly upon the theory that her claim was founded upon rights she had under the contract, and that she was a third party beneficiary thereunder, and she excepted to the court's refusal to adopt the same. Thus it appears that the theory that appellant had a right and interest in the policy under and by reason of the contract made for her benefit, and as apart from such interest, if any, established by the decree, was ever present in the case even if other contentions may have been stressed at the trial.

Originally the appeal assigned twenty-three errors which were presented under four points but by abandonment of it as affecting the support money claim these appear to be reduced to twelve assignments of error which are argued under two points as to the appellant's claim. The appellee also assigns error under Rule 17, Section 2, of the Supreme Court Rules.

The first point argued in appellant's brief is stated thus:

"That breach of the separation agreement of March 20, 1939, by Leland M. Quantius gave the appellant Carmen Quantius Shirk O'Brien a cause of action against the estate of Leland M. Quantius, deceased."

She contends that the separation agreement is a valid contract and she has enforceable rights under it and that it was not merged in the divorce decree so as to destroy its separate force and effect as a contract conferring rights and interests to her independently of the decree. The appellee disagrees on all points.

The document in this case called "separation agreement" is plainly a property settlement between husband and wife, wherein they agreed to a division of their property and exchanged their promises never to set up claim against property afterwards acquired by the other "either in life or by way of inheritance;" and agreed that the child, Carmen, should remain in the custody of the mother and that Quantius would pay a certain sum monthly for her support, and would pay a sum as alimony to the wife, and then the agreement stated their agreement concerning the life insurance policy as quoted in the above finding No. 2. The agreement was approved by the court and in large part incorporated in its decree. The court did not thereby make the contract for the parties; the court merely approved the provisions as fair and directed that they be carried out. An understanding of the make-up and terms of this agreement is so important in this case that we set it out in full here.

"Separation Agreement

"This agreement entered into this 20th day of March, 1939, by and between Leland M. Quantius and Betty Quantius, husband and wife, witnesseth:

"That parties hereto realizing that they are incompatible and that there is no longer a possibility for them to live together as husband and wife hereby agree to separate and live apart each from the other and further agree as to their property rights as follows:

"Each party hereto agrees never to set up any claim to any of the property herein allotted to the other or which may be hereinafter acquired by the other either in life or by way of inheritance.

"(1)–(2)

"It is further agreed by and between the parties hereto that the wife, Betty Quantius, shall have as her sole and separate property, all furniture and household goods, belonging to the parties and now located at 634 Taylor Street, Topeka, Kansas, and that the husband, Leland M. Quantius, shall have and own as his sole and separate property the Terraplane automobile, now owned by the parties hereto and registered in the name of the said Leland M. Quantius;

it is understood that the said automobile is now subject to a mortgage in the sum of approximately $600.00 which said mortgage is assumed by the said Leland M. Quantius.

"It is further agreed that the child, Carmen Quantius, now 18 months of age, shall reside with and remain in the custody of her mother, Betty Quantius, and that her father, Leland M. Quantius, shall have the right to visit the said child at reasonable times, and that the said Leland M. Quantius shall pay to Betty Quantius for the support of the child the sum of $25.00 each month, payments to begin on the 1st day of April, 1939.

"It is further agreed that, in the event either of the parties to this contract shall petition for divorce this agreement may be incorporated as a part of any decree of divorce which may be granted to either parties.

"In Witness Whereof, the parties hereto have subscribed their names the date and year first above written.

"/s/ Mrs. Betty Quantius
/s/ Leland M. Quantius

"(1) It is further agreed by and between the parties that the husband, Leland Quantius shall pay to this defendant alimony in the amount of $540.00 which sum shall be payable at the rate of 15.00 per month from the first day of April, 1939 and shall continue for a period of thirty-six months.

"(2) It is further agreed that the plaintiff, Leland Quantius, shall make a provision in the insurance contract held by him payable to Carmen Quantius in the event of the death of said Leland Quantius so that said beneficiary may not be altered; it is also agreed that said policy may not be allowed to lapse or become void.

"/s/ Leland Quantius
/s/ Mrs. Leland Quantius
"x O.K. Barton Carothers
Atty for Defendant
Arthur J. Stanley, Jr.
Attorney for Plaintiff"

A certified photostatic copy of this agreement was attached to the stipulation, as an exhibit, and was before the court for examination and study. On said instrument all the signatures and the symbols "(1)– (2)" between the third and fourth paragraphs, and the paragraphs indicated (1) and (2), were written in longhand with pen and ink; and the remainder of the instrument was typewritten. Of this, hereinafter.

The appellee insists that the contract was merged in the divorce decree and so far as it affects the issues it derived and derives its life and strength from the decree; that the decree cannot be enforced now and it follows that the contract provisions in question are of no force or effect; and further she says that said contract provisions were without consideration. The defense is an attack. Notwithstanding the appellant-

claimant's denial of the decree as the foundation of her right and claim, the appellee is entitled to present her defense thereon, and we are justified in considering the effect of the decree and of the contract—separately, if need be.

The appellee leans heavily upon the case of Maginnis v. Maginnis, 323 Ill. 113, 153 N.E. 654, 657, to support her claim of merger. That was a divorce case involving a state of facts similar to the one in the case here and included an award of alimony and support money to be paid weekly and also a decreed requirement that the defendant pay the premium from time to time accruing upon his life insurance policy in which the plaintiff there and her daughter were the beneficiaries. After remarriage of said plaintiff and the daughter's attaining majority, he sought a release from the obligation to keep up the policy payments. The beneficiary claimed that the decree's terms with regard to the alimony and the insurance premium were the result of agreement of the parties. The court held that the court had power to modify the provisions of the decree when a change of circumstances justified the change even though such provisions were put in the decree by the agreement of the parties; that "after the decree was rendered, the rights of the parties rested upon it and not upon their agreement", and that the trial court was warranted in finding that the policy there was "a security or protection for the payment of alimony." The court concluded that under the circumstances shown "the requirement to pay the insurance premium was part and parcel of the provision for maintenance", and the obligation further to maintain the ladies having passed the plaintiff was entitled to be relieved from the requirement to pay the accruing premium.

In the present case the trial court concluded that the parents intended by their agreement to provide that the insurance policy should stand as security or protection for the child in case the father should die while his duty to support her still existed, and that to such purpose the provisions were incorporated in the decree and the contract merged in the decree; that the father's duty to support the child ceased when she was adopted by another

■ Some circumstances in the Maginnis case distinguish it from the case at bar, especially the fact pointed out by the court that no purpose was therein indicated to make the beneficiaries irrevocable in the policy. Here such purpose seems well defined.

■ In framing the divorce decree the Kansas court was concerned with the problem of the support and welfare of the child, Carmen, during the period through which the father, Leland Quantius, would be legally liable for her support; and the

court was not concerned with, and was without right to indulge in, building up an estate for the child after she attained the age of twenty-one or ceased to be a subject of her father's legal duty to support. In the case of Emery v. Emery, 104 Kan. 679, 180 P. 451, the court said:

"The statute provides * * *

" 'When a divorce is granted the court shall make provision for the guardianship, custody, support and education of the minor children of the marriage, and may modify or change any order in this respect whenever circumstances shall make such change proper.' * * *

"This clearly means that provision shall be made for the support and education of the children until they shall become of full age. It does not contemplate the creation of a fund for their maintenance after attaining majority; their parents being then under no legal obligation to care for them. * * *

"The power even of a court of general jurisdiction does not extend to taking property from a party to an action and giving it to a stranger. Whatever power the district court has in a divorce suit to afford protection to the children of the parties is derived from the statute quoted, and is limited to making provision for their support and education during their minority."

See In re Coe's Estate, 56 N.M. 578, 247 P.2d 162.

So in adopting and setting forth in the decree the contract provisions as to maintaining the policy and taking the steps necessary "to provide * * * that the name of the beneficiary shall not be changed," the court was primarily concerned with protecting and securing the continued support for the child so long as it was the court's function to oversee her support, that is to say, so long as such support remained a legal obligation of Leland Quantius. Properly the court could go no further. Of course the court retained jurisdiction to modify the decree's provisions as to custody, control and support of the child, including those relating to the insurance and inserted for the protection and security they might afford for such support; it could not do otherwise.

The appellee contends and the court concluded that upon the adoption of the child by Mrs. Shirk the legal obligations of Leland Quantius to support and educate the child were terminated, and in effect that all the provisions of the decree relating to such obligations not accrued, including those provisions regarding the insurance, then and there became moot and of no further binding force or effect. The appellant denies that the adoption had such results, and says that the effect of adoption as it relates to the obligations of the

natural parents has never been passed upon by the Kansas courts; the appellee does not claim that such matter has been passed upon there directly. Appellant cites Dwyer v. Dwyer, 366 Ill. 630, 10 N.E.2d 344, and says the Illinois statute is, so far as she knows, the only one similar to the Kansas statute in failing to declare that upon adoption the natural parent is relieved of obligation to support his child. The case quotes the Illinois statute and implies that in adoptions carried out under it the natural parents may not be necessarily relieved of the duty to support their offspring who are adopted by others. Both parties here refer to and discuss the case of Trunkey v. Johnson, 154 Kan. 725, 121 P.2d 247, at page 250, in which the following language occurs:

"The pleading here discloses no judgment for any stipulated amounts but only an order that from time to time in the future the father make certain payments. If unchanged the effect of the order would cease upon death of the child, or upon its marriage * * * or upon its having rights of majority cast upon it by operation of law * * * or upon its adoption by other persons." (Italics supplied.)

And the appellant comments, "This language was completely unnecessary. It is obiter dictum of the purest form." The

criticism is well founded; still the language used is a pronouncement indicating the understanding of that court and it might well point to the interpretation which that court will or may express of the matter when and if the question is squarely presented there. There being no authoritative interpretation of the statute by the courts of Kansas, we have the right to interpret it for ourselves and in the light of our own public policy, this being the forum in which the appellant presses her suit. Considering the statute in question (see Finding No. 7 set forth above), we hold that upon the adoption of Carmen by Mrs. Shirk, the legal obligation of the natural father, Quantius, to support and educate said child immediately ceased. The statute says the adopting parent shall be subject to all the liabilities of a parent toward the child; this includes the obligation to support as a natural parent must, and at least implies a substitution for and release of the latter. It says all rights of the natural parent toward the child shall cease. A parent's duty to support his child is interlocked with his right to enjoy and see to and know of the acceptance and use of the support furnished. Such right is cut off by the statute and the correlative duty ceases.

The decree had spent its force in regard to its direction to Quantius to maintain his daughter as the policy beneficiary, and so far as that compulsion was concerned he

was at liberty to change the beneficiary as he did.

As before stated the appeal from the judgment denying the claim for support subsequent to the adoption was abandoned, and that removed the question of right to such support from this case. We here point out that the foregoing repeated references to support and liability therefor under the decree and the effect of the adoption thereon, were presented only for study as to the bearing the same—the rights, liabilities and obligations—might have upon the primary question of the purpose and status of the agreement to maintain the insurance and the beneficiary as claimed.

The appellant's declaration that she no longer relied upon the decree as a foundation for her claim, although the decree was made a basis for the claim as filed, at first blush seemed to remove the decree's effect from consideration in the case. But the case as presented to the court below, and by the appellant's brief in chief and the appellee's answer brief thereto, including her assignments of cross-error, does not lend itself very well to over-simplification; and after intra-court discussions and counselling it is believed that this is a case justifying discussion of principles and points developed under the theories of both the parties, rather than paring all down to the bare bones which might have sufficed for erecting the decision.

Having determined that the court was not wrong in holding that after the adoption Mr. Quantius was not bound by the decree to maintain the insurance policy or the same beneficiary therein, attention is now drawn to the contract itself as separate and apart from the decree. It is noted that benefits provided under that contract to the third person beneficiary, if the contract be valid and binding, extend or may extend over and beyond that period of time during which the father, Leland Quantius, would be legally obligated to support said beneficiary.

We must now turn to the "Separation Agreement" which is above set forth in these pages for critical examination of that instrument itself. A study of said instrument reveals that by the part of it which was typewritten and dated March 20, 1939, and which appears above the first signatures of the parties, the wife, Betty Quantius, agreed never to set up claim to any property of Leland M. Quantius, and the parties agreed to a certain division of all their worldly goods therein mentioned, and agreed as to the custody of the child, Carmen, and the right of Quantius to visit her at reasonable times, and as to a monthly payment for the child's support to be paid by him; and further, that "in the event either of the parties to this contract shall petition for divorce" the agreement might be incorporated as a part of any decree of divorce that might be grant-

ed to either of the parties. Plainly the parties then had in mind and were looking forward to a possible, or perhaps even probable and expected, commencement of divorce proceedings at some later time. Further study of the instrument clearly reveals that the handwritten paragraphs (1) and (2) must have been added at some time after said contemplated divorce action had been commenced, for in said paragraphs it is provided that the husband, Leland Quantius, shall pay to "this defendant" alimony, and that "the plaintiff, Leland Quantius," shall do certain other things. The signatures to these added paragraphs are not written as were the signatures to the typewritten portion of the paper.

In presenting her first point, above quoted, the appellant says the separation agreement is a valid contract supported by legal consideration, and that Betty Quantius and Leland Quantius each acquired certain benefits and suffered certain detriments. The appellee answers that the handwritten portion, being the last two paragraphs, of the agreement was without consideration and that "The Mother paid no consideration whatsoever in behalf of the provision for the child." The first of the handwritten paragraphs related to alimony, a matter for determination by the court, and it is of no consequence in this matter now. The second, or "(2)", of the handwritten paragraphs contains the provisions in controversy.

Upon study of the facts presented by the stipulation, including the revealing exhibit of the contract, the district court found and concluded that "the agreement between the parents is without consideration insofar as Claimant Carmen Quantius Shirk O'Brien is concerned." That is a conclusion and inference logically drawn from the matters that are shown and known in the case. The stipulation says "on March 20, 1939," quoting the date written in the first and typewritten part of the instrument, the parties entered into the separation agreement; but attached to that stipulation and made a part of it is a photostatic copy of the original so-called contract which reasonably proves that its last two paragraphs were added at some time later than the first part of it proclaims itself to have been executed.

"We have also held that, where an exhibit * * * is made a part of a complaint, any allegation of the complaint which conflicts with the exhibit must yield thereto and be disregarded in so far as the conflict extends. Titsworth [Co.] v. Analla, 25 N.M. [628] 631, 186 P. 1079." Town of Farmington v. Mumma, 35 N.M. 114, 291 P. 290, 291.

There is no good reason why that same principle ought not to apply to a con-

dition such as this where the exhibit conflicts with the words and conclusions of a stipulation.

■ "The general rule as to the construction of stipulations is well stated in 50 Am.Jur., Stipulations, sec. 8, p. 609: 'As a general rule, stipulations should receive a fair and liberal construction, in harmony with the apparent intention of the parties and the spirit of justice, and in the furtherance of fair trials upon the merits, rather than a narrow and technical one calculated to defeat the purposes of their execution. The terms of a stipulation should not, however, be so construed as to extend beyond that which a fair construction justifies. * * * A stipulation must be construed in the light of the circumstances surrounding the parties and in view of the result which they were attempting to accomplish. In seeking the intent of the parties the language used will not be so construed as to give it the effect of an admission of fact obviously intended to be controverted, or the waiver of a right not plainly intended to be relinquished.'

"With these principles in mind we shall endeavor to ascertain the true meaning and effect of the stipulation. It must be evaluated in light of the circumstances surrounding the parties

and the result they hoped to achieve by submitting it to the court. * * * It would not be substantial justice to the parties for this court to torture the stipulation into proportions which its drafters did not intend it should have." In re Brandt's Estate, 67 Ariz. 42, 190 P.2d 497, 500.

■ In the instant case it cannot be believed that the parties intended to declare or admit by the stipulation that the agreement instrument was made up or drawn in any other manner than that which its face and the circumstances indicate, or to admit the validity of said agreement, or to waive the defense of no consideration.

And now making further reference to and study of the separation agreement these things stand revealed: that every promise made by Betty Quantius and everything given by Betty Quantius and every detriment suffered by Betty Quantius in consideration for anything given or promised by Leland Quantius under the contract, was made or given or suffered by her at the time of the execution of the first and typewritten part of said agreement; that thereafter she gave nothing but took in more; and that the first part of said contract was complete in itself. When in the last paragraph of said agreement Leland Quantius said in effect that he would make the child an irrevocable

beneficiary of the insurance policy, he received no promise in return nor any consideration therefor, for already Mrs. Quantius had granted and given and promised him all that she ever did. Already she was obligated by her contract of March 20, 1939, the typewritten agreement of the exhibit, to do and give and perform all and every service and thing which she ever was bound to do under said contract so-called in all its parts.

"The rule is well established that the promise to do what a person is already obligated by law or contract to do is not sufficient consideration for a promise made in return. 17 C.J.S., Contracts, §§ 111 and 112, pp. 464, 465; 12 Am.Jur., Contracts, Sec. 88, p. 582; Williston on Contracts, Sec. 132." Hewitt v. Novak, 117 Mont. 365, 158 P.2d 627, 629. See Munro v. City of Albuquerque, 48 N.M. 306, 150 P.2d 733; Harris v. Morgensen, 31 Wash.2d 228, 196 P.2d 317; Perry v. Farmer, 47 Ariz. 185, 54 P.2d 999.

It is of course essential to the validity of a contract made for the benefit of a third person that it be upon consideration. It must be a contract good and binding as between the original parties to it.

"The right of a third person for whose benefit a promise is made is affected with all of the infirmities of the agreement as between the parties thereto, and the authorities are uniform in holding that a mere naked promise from one to another for the benefit of a third will not sustain an action. 6 R.C.L. 886, § 273; Hicks v. Hamilton, 144 Mo. 495, 46 S.W. 432, 66 Am.St.Rep. 431; Dunning v. Leavitt, 85 N.Y. 30, 35, 39 Am.Rep. 617." Meyerson v. New Idea Hosiery Co., 217 Ala. 153, 115 So. 94, 97, 55 A.L.R. 1231.

"Promise made expressly for benefit of third party, without consideration, cannot be enforced." Syllabus 4, Anderson v. Gibbs Lumber Co., 157 Okl. 17, 10 P.2d 416.

The appellant admits that there never was a gift made to her of the insurance policy, and that she does not hold place as nor claim to be a donee beneficiary; and she admits that the policy was retained by Leland Quantius and that it had a provision authorizing the insured to change the beneficiary.

Consideration for a contract in writing initially is presumed; but that is only a presumption in the absence of a showing, and it gives way before proof. Where the instrument upon its face bears the evidence of its infirmity and lack of consideration, it without more furnishes the proof which destroys said presump-

tion. As to the particulars here in controversy the agreement in question may be reasonably interpreted as furnishing that proof against itself.

Nothing appears in the record to show that any consideration was given for the promises or contract of Leland Quantius made or offered by him as set forth in the handwritten paragraph marked (2) of the separation agreement; and certainly there is not sufficient showing thereon to override the decision of the trial judge, which is entitled to and has a presumption of correctness in its favor until error in it has been pointed out. See, Baker v. Citizens' State Bank, 81 Mont. 543, 264 P. 675; Sunmount Co. v. Nagel, 30 N.M. 450, 236 P. 505; Cardenas v. Ortiz, 29 N.M. 633, 226 P. 418; Sandoval v. Unknown Heirs of Vigil, 25 N.M. 536, 185. P. 282.

The stipulation and proofs and reasonable inferences drawn therefrom sustain the court's essential findings and conclusions, which in turn sustain the judgment.

The judgment of the District Court is affirmed.

It is so ordered.

SADLER and LUJAN, JJ., concur.

SEYMOUR, J., concurring specially.

McGHEE, C. J., and COMPTON, J., not participating.

SEYMOUR, Justice (concurring specially).

As I understand the majority opinion, it disposes of this case on the basis that there was no consideration for the promise concerning insurance. Under § 20–208, N.M.S.A.1941 and the record in this case, I feel that there is a presumption of consideration for the promise in question and no evidence to overcome that presumption.

I concur in the result reached by the majority upon the following basis: The insurance provision both in the Separation Agreement and as carried forward in the decree was primarily concerned with the protection of the child against loss of maintenance money by the death of Leland Quantius during the period there was a legal obligation of support upon him. By reason of this primary purpose, the contractual provision as to insurance merged in the divorce decree and the divorce court retained jurisdiction to modify the terms of this separable portion of the separation agreement. Maginnis v. Maginnis, 1926, 323. Ill. 113, 153 N.E. 654. The adoption of the child (at the date of which Leland Quantius stopped making the support payments) relieved the natural father of any further legal liability for the support of the child and, in fact, divested the divorce court of jurisdiction as to the custody and support of the child. Hardesty v. Hardesty, 1939, 150 Kan. 271, 92 P.2d 49. When

the legal obligation to support this child terminated and the jurisdiction of the divorce court terminated as to the custody and support of the child, all decreed obligations with reference to the insurance ceased. Therefore, Leland Quantius had the right to change the beneficiary of the insurance policy, and the claim was properly denied.