228

LOIS HARRIS, *Respondent*, v. J. C. MORGENSEN *et al.,*
*Appellants.*[1]

*A. J. Hutton,* for appellants.

*Wallace & Arthur,* for respondent.

BEALS, J.—The plaintiff in this action, Lois Harris, a
widow, as vendee, and the defendants, J. C. Morgensen and
Marie Morgensen, husband and wife, as vendors, entered
into a written contract dated November 17, 1946, whereby
the vendors delivered, and agreed to sell, to the vendee per-

[1]Reported in 196 P. (2d) 317.

sonal property in Kitsap county, Washington, described as equipment, furniture, and supplies, then used in the conduct of a business known as the "Triple M Restaurant and Ice Cream Parlor," located at Poulsbo, together with the name and good will of the business.

The contract provided that the vendee might use the property and would pay therefor two thousand dollars, one half of which was paid in cash, the balance to be paid at the rate of fifty dollars or more per month, including interest at the rate of six per cent per annum.

The contract provided that time was of the essence thereof, and that, should the vendee make any default in any condition of the contract, the sellers might terminate the same without notice, and should thereupon be entitled to immediate possession of all of the property and to retain all payments theretofore made. The contract further provided as follows:

"In case default is made and this contract terminated as above provided, the said forfeited payments shall be in full satisfaction of all claims against the buyer arising out of this contract, provided, the buyer shall forthwith peaceably deliver up possession of all goods and chattels to the seller in good order and condition (reasonable use and wear thereof excepted)."

The foregoing contract was regularly acknowledged before a notary public, and possession of the property was delivered to plaintiff in connection with a lease, bearing date November 17, 1946, between defendants, as lessors, and plaintiff, as lessee, whereby the defendants leased to plaintiff for the term of two years from the date of the lease, at a rental of one hundred dollars per month, payable monthly in advance, premises described as follows:

"A portion of that certain building known as the Triple M dairy located at Irish's corner, near Poulsbo, Washington, described as follows: an area approximately 20 x 24 feet being used on the date of this lease as a restaurant and ice cream parlor."

The lease provided for the payment of the monthly rental on the seventeenth day of each month during the term, and

that, if any rent should be due and unpaid, or if default be made in any of the covenants of the lease, it should be lawful for the lessors to re-enter the premises and remove all persons therefrom. The lease was regularly acknowledged before a notary public, and, as above stated, plaintiff was placed in possession of the demised premises, which were a portion of a building owned by defendants, in which the latter had conducted and continued to conduct a dairy business.

Plaintiff's operation of the restaurant was not successful. About the middle of April, 1947, plaintiff discussed with defendants the matter of her abandonment of the project. At this time, plaintiff was indebted to defendants under the contract of conditional sale, having failed to make several of the payments provided therefor when the same fell due. Plaintiff was also delinquent under the lease, having failed to pay, when due, some installments of rent. The plaintiff was also indebted to defendants for merchandise which she had purchased from them, in a sum in excess of one hundred dollars, the exact amount of this indebtedness not being disclosed by the evidence.

It nowhere appears that plaintiff was entitled to any offsets against the defendants in connection with any portion of her indebtedness to them above mentioned.

It appears that plaintiff, after for some weeks operating the restaurant on a smaller scale, moved from the premises, May 17, 1947. Plaintiff had previously suggested to defendants the question of making some adjustment between the parties, and, on the date last mentioned, the matter was again the subject of discussion.

No agreement ever having been made and accomplished, August 29, 1947, plaintiff filed her complaint against defendants, alleging the making of the contract of conditional sale above referred to; that plaintiff remained in possession of the premises until May 17, 1947, when she and defendants agreed that the contract should be rescinded; that plaintiff had returned the business, personal property, and leased premises to the defendants, and that " . . . the defendants agreed in writing to pay to the plaintiff the sum of

$500.00, in full payment of the plaintiff's interest therein."

The plaintiff further alleged that, thereafter, defendants took possession of the premises, but that

" . . . notwithstanding the agreement to pay the sum of $500.00 in full of plaintiff's interest in said property, the defendants have failed and refused to pay the said $500.00 or any portion thereof."

Plaintiff prayed for judgment against defendants in the sum of five hundred dollars, together with costs.

The defendants filed their answer and cross-complaint admitting the execution of the contract of conditional sale, denying that defendants had agreed to pay plaintiff five hundred dollars, and, as an affirmative defense, pleading the terms of the contract of conditional sale and alleging that plaintiff had breached the contract by removing some of the property from the premises, also alleging some further items by way of damages.

By a cross-complaint, the defendants alleged that the plaintiff had not made all of the payments called for by the contracts between the parties, and was indebted to defendants in the sum of $453.15, for which amount defendants demanded judgment against plaintiff.

Plaintiff having replied with denials to the affirmative allegations in defendants' answer and cross-complaint, the action was tried to the court, sitting without a jury, resulting in the entry of findings of fact and conclusions of law in plaintiff's favor, followed by the entry of judgment for the plaintiff and against the defendants, in the sum of five hundred dollars and costs.

The defendants moved for a new trial, and, after the denial of their motion, appealed to this court from the judgment rendered against them.

Appellants assign error upon the denial of their motion to dismiss the action at the close of respondent's case; upon the ruling of the trial court based upon the evidence; upon the entry of the findings of fact, conclusions of law, and judgment signed by the court; upon the refusal of the court to sign findings, conclusions, and judgment proposed by ap-

pellants, and upon the entry of the order denying appellants' motion for a new trial.

From the evidence introduced by the respective parties, it clearly appears that respondent's operation of the business was not successful, and that, during the month of April, 1947, respondent decided to abandon the project. May 1st, she took a position at Keyport, where she worked six hours a day, still conducting the business at Poulsbo on a limited schedule. Respondent was unsuccessful in attempting to find a purchaser for the restaurant, and requested appellants to cancel her lease and conditional sale contract. She also requested appellants to return to her some of the money which she had paid to them. These matters were, evidently, on several occasions, the subject of conversation between the parties.

Apparently, appellants were willing to cancel the lease and sale contract, but no definite agreement was reached between the parties concerning respondent's request for the return of some of the money which she had paid.

Friday, May 16th, respondent closed the restaurant, and, on the following morning, appellants began to repaint the premises, although respondent had not yet removed all of her property from the premises.

The trial court found that, May 17, 1947, respondent was in default on account of rental due appellants under the lease in the sum of one hundred forty dollars, and was in default under the contract of conditional sale in the sum of two hundred dollars, having failed to make payments aggregating these amounts as the same fell due. At this time, as above stated, respondent was also indebted to appellants for merchandise which she had purchased from them.

On the morning of May 17th, respondent visited appellants, and her indebtedness to them and other matters were discussed. At this time, because of respondent's defaults in paying her rent when due under the lease, and in paying installments on the purchase price of the personal property, as called for by the contract of conditional sale, both contract and lease were subject to termination at appellants'

option, and, by the terms of the lease and contract, appellants were entitled to re-enter the premises and take possession thereof and of the personal property. Of course, the provision of the lease last referred to did not give appellants the right to take forcible possession of the premises, but, nevertheless, appellants were entitled to demand possession thereof from respondent, and were entitled to receive possession of the premises from respondents, unless there existed, in respondent's favor, some legal right to maintain such possession. It appears, from the evidence, that respondent never even thought that she had any such right, and there is no suggestion anywhere in the evidence that a right of any description existed in her favor.

Prior to this date, respondent had requested appellants to return to her some portion of the down payment which she had made pursuant to the contract of conditional sale, and, on the morning last referred to, she again urged appellants to return to her some portion of this payment. It nowhere appears, from the evidence, that respondent claimed that she was legally entitled to receive from appellants any part of this money, the reasons for the request being stated in that portion of her testimony hereinafter quoted.

It is undisputed that, during the course of this discussion between the parties, appellant J. C. Morgensen signed and delivered to respondent a memorandum, as follows:

"Poulsbo, Wash., May 17, 1947
"Bal. due to Mrs. L. Harris $500.00
"[signed] J. C. Morgensen"

The above was written upon an ordinary bank deposit slip and was admitted in evidence during the trial of the action.

The trial court found that the parties had entered into the contract of conditional sale above referred to; that the sale price of the personal property was two thousand dollars, of which respondent had made a down payment in the amount of one thousand dollars, agreeing to pay the balance at the rate of fifty dollars or more per month, including interest, and that respondent had remained in possession of the property and the premises covered by the lease until May 17,

1947, when she was indebted to appellants as hereinabove set forth.

Finding IV made by the trial court reads as follows:

"That on the said date, May 17, 1947, the plaintiff and the defendants mutually agreed upon a rescission of the said contract, and that the plaintiff agreed to surrender said premises and all interest in said conditional sales contract to the defendants, and agreed to return the said business to the defendants, and the defendants agreed in writing to pay the plaintiff the sum of five hundred dollars ($500) in full payment of the plaintiff's interest therein."

In connection with this finding, it should be observed that the record contains no evidence that it was within the contemplation of either respondent or appellants that the memorandum was executed as payment for any interest, on the part of respondent, either in the personal property or the lease.

The court then found that appellants took possession of the premises, but failed to pay respondent five hundred dollars or any portion thereof. We quote the court's finding VII:

"That notwithstanding the failure of the pleadings of the defendants to raise the issue of the lack of consideration for the said agreement to pay the sum of five hundred dollars ($500), the Court has considered the said issue upon the arguments of the attorney for the defendants, and has found that the said agreement to pay the sum of $500 is amply supported by consideration, in that in exchange for said rescission of said agreement, the plaintiff surrendered all interest in the lease on said premises, all interest in the conditional sales contract, and all of her equipment in said business, and all other personal property which was the subject matter of said conditional sales contract."

From the findings, the trial court concluded that respondent was entitled to judgment against appellants for five hundred dollars, and costs, and entered judgment accordingly.

The statement of facts discloses no intimation that appellants were anywise dissatisfied with their tenant, save on account of her failure to make the payments due under the

lease and contract of conditional sale. It appears that respondent had simply entered upon a project which, for some undisclosed reason, was not a financial success.

Respondent contends, and, by the judgment entered, the trial court determined, that the parties had made a settlement of all matters pending between them, and that, in addition to canceling all indebtedness due from respondent to appellants, appellants would return to respondent the sum of five hundred dollars, in accordance with the terms of the memorandum.

Appellants contend that no final and complete settlement was reached, and that the memorandum which Mr. Morgensen signed was intended merely as evidence of a willingness, on the part of appellants, to return to respondent five hundred dollars of the sum she had paid appellants when the contracts were entered into. Appellants vigorously contend that it was never agreed that they would cancel their accrued claims against respondent and, in addition, pay her five hundred dollars, and that, as matter of law, the memorandum signed was not supported by any consideration and is, for that reason, not a valid obligation enforcible against them.

While appellants did not plead lack of consideration for the memorandum, the trial court allowed them to introduce testimony upon that phase of the case and, as indicated by the court's finding above quoted, evidently considered the pleadings as amended. The court ruled that the memorandum was supported by a consideration, in that respondent surrendered the lease and all interest under the conditional sale contract and the property covered thereby.

The burden of proof rested upon respondent to establish her claim against appellants. In this connection, respondent, of course, relies upon the memorandum above referred to, signed by appellant J. C. Morgensen. While this writing constitutes strong evidence against appellants, it being merely a unilateral undertaking, all surrounding circumstances leading up to the execution of the document should be considered. 4 Jones Commentaries on Evidence

(2d ed.) 2985 *et seq.*, §§ 1630, 1631. While these texts refer to "receipts and releases," the rules referred to are, in the main, applicable to the situation here presented.

Respondent admittedly owed appellants a large balance under the contract of conditional sale (a portion of which was delinquent); she was also indebted to appellants for rent past due and for merchandise which she had purchased from them.

It appears from the testimony that respondent, in her conversations with appellants, did not even suggest that there was any legal basis whatsoever for a claim, on her part, against appellants.

Appellant J. C. Morgensen, called as a witness by respondent at the opening of the case, testified, on his examination in chief, that, May 17th, he and respondent had, by mutual consent, rescinded the contract of conditional sale, and that it was agreed between respondent and appellants that appellants would allow respondent five hundred dollars "on the thousand dollars she had paid in." In the course of the witness's examination by respondent's counsel, the following occurred:

"Q. Did you and she go over all of your accounts, including what she still owed you for milk and ice cream? A. Yes. Q. And what she owed you for rent? A. Yes. Q. And what she owed you on the contract? A. That is right. Q. And against that, you balanced what she had paid in on the contract? A. That is where I and Mrs. Harris misunderstood. Q. You discussed how much she had paid in? A. Naturally what she owed, should come off the $500. Q. And you also took an inventory of the merchandise? A. Yes, we did, both at the time she took over and at the time we took over. Q. And then after that inventory was taken, you arrived at this settling figure of $500? A. We arrived at these figures that she owed us; $453, I think, she owed us in back bills—$453. Now, we had agreed that we had to take back the business, when she went to Keyport. After that, we granted her $500 on the $1,000 she had paid in to start that business, but it was never my intention that she would also have that $453. THE COURT: Why did you give this statement, saying, 'Balance due Mrs. Harris, $500'? THE WITNESS: That is on the contract—that she should have half of that back. That was the agreement. She had paid us a thousand dollars

when she took over the business. THE COURT: The balance would only be $500 less $453, then, wouldn't it? THE WITNESS: $453 is what Mrs. Harris owed me. THE COURT: The balance would be only $47, wouldn't it, instead of $500? Why didn't you put that on there. MR. HUTTON: May I bring out that, later? Q. Now, isn't it true, Mr. Morgensen, your wife was present at that time and she was very violently opposed to paying Mrs. Harris anything? A. No, I don't think she was. I was the one that said I didn't think she was entitled to anything back, being she was behind, and I don't think my wife said anything about that. That was between Mrs. Harris and I. Q. Didn't your wife make the statement she didn't think Mrs. Harris should have anything? A. No, that was me made that statement. I remember, distinctly, she said, 'You wouldn't take money from an old widow, would you?' And I said I'm not inclined to do those things but we couldn't afford to give Mrs. Harris all that money, either."

On cross-examination by his own counsel, the witness again testified concerning the arrangement with respondent, stating that it was agreed that respondent should receive credit for five hundred dollars on the down payment she had made on the personal property, and that she would pay appellants what she owed them, which, the witness stated, amounted to four hundred fifty-three dollars. The witness further testified that, at first, he refused to allow respondent any credit, but that he later signed the memorandum referred to above.

Concerning the agreement between the parties, respondent testified, in part, as follows:

· "Q. Then, to go into the background of the signing of this statement that balance due was $500, which Mr. Morgensen signed, — will you tell the court what happened in the execution of that statement? A. Well, I went over and they didn't think they should pay it. He thought the wife should pay it and we talked it over and I said I thought it was coming to me back — well, the rest of the contract, I didn't owe him. I thought I should have it back and he kinda agreed with me after awhile and said he would go down to the lawyer on Tuesday and have the papers drawn and I said, 'I will take any kind of payments you can make.' I said, 'I won't make it hard for you and Mrs. Morgensen.' He said, 'I will have the papers drawn up and I will see

to it.' And I went down on Tuesday and he hadn't been down to the lawyer and I went down on Thursday and the lawyer wasn't there and so, Friday, I called Mrs. Morgensen and asked if he could come down Friday and have the papers made up. She said she didn't think he was going to do anything about it. And the day we figured it up, I said, 'You figure up all I owe you and the interest on it and take it out of what I already paid you.' He said, 'Did you read the contract?' And I said, 'I read it all. I thought we were friends. I don't think that is the way for friends to do and I am a widow. I didn't think you'd do that to me.' And he talked against it for awhile and he finally decided he'd pay. I said there was some $40 over and said to leave that out and he said he'd take $500 over to me and he wanted to know if I would divide with him and give him half. And I said I didn't think I should. . . .

"Q. You continued in possession until May 17th when this paper was signed? A. I told Mr. Morgensen I thought I should have something — I said that I had some money coming back and so he wrote out that slip and gave it to me. Q. Was this slip written after you both figured out what you were in default on the contract and he figured six per cent interest and he added that to it. And that was what was left — that account of $453 and the balance — I said, 'I will throw off $500.' And I think that is all fair. [It seems clear that this portion of the statement of facts, commencing with the words 'Q. Was this slip written . . .,' is incorrect, as evidently a question and answer are confused.] . . .

"Q. You said Mr. Morgensen told you to see the lawyer. What lawyer was that? A. I don't know his name. I supposed it was you. It was the lawyer in Keyport. He was three days a week in Poulsbo,— Q. Let's get it clear. What were you going to see a lawyer about? A. He said he would go down and have the papers drawn. Q. Was it the original contract or about this settlement? A. No, about this settlement. Q. He told you to go see the lawyer? A. He said, 'I will go down Tuesday.' He said, 'I will go down, Tuesday; he is here, Tuesday, Thursday and Saturday and I will have a paper drawn up.' THE COURT: He said he would do that? THE WITNESS: He said, 'We will probably both have to be there to sign it.' I went down on Wednesday— no, Thursday, I went down—maybe Tuesday, because, anyway, I went there and I haven't heard anything about it. He tried to call Mr. Morgensen and Mrs. Morgensen said, 'I think he's at the house.' But we called over there and he

didn't answer. He said, 'You come back either Thursday or Saturday'—that the lawyer would be there that day—and I said, 'All right.' And I went back Thursday and the lawyer wasn't there so I called Mrs. Morgensen and on Friday, I went to see if it was possible to see him— Q. I don't think you need to go further on that. THE COURT: I don't think so. All that happened before he signed that paper? THE WITNESS: After. Yes, I left the cafeteria the day I was going to give up possession. THE COURT: I see. Q. And you were going to try to get this lawyer to draw up the papers to settle this contract? A. Yes, some kind of papers to it—so we could get some settlement. I didn't want to go on and not do anything about it. . . .

"Q. When did you start leaving? A. About the middle of April. Q. From the middle of April down to May 18th, you were trying to get an agreement to rescind the contract and get out? A. Trying to get my money out. That is why I wanted to rescind it. Q. They agreed you could rescind? A. Mrs. Morgensen said she'd take it back by the 17th, '. . . if you don't sell it before that.' She did that on the telephone. Q. So, then, the contract was ended, is that right? A. No, it wasn't, from my estimates. I thought I should get my money—the balance. I said, 'You take everything I owe you and interest. I don't want anything that don't belong to me, but what is left of the thousand dollars I put in there—I feel I should have that.' . . .

"Q. What agreement was to be prepared by the lawyer? Was it the agreement for the rescission of the contract or was it an agreement to cover the manner in which they were to pay you the $500? A. Well, that is what it was. He said he'd have the contract drawn. THE COURT: Relating to the manner in which he would pay you and when? THE WITNESS: He said, 'I haven't the money and I don't know how I could pay it back.' I said, 'I won't push you on it. You can make the payments anyway you want.' 'Well,' he said, 'I will have the paper made out.' Q. That was to set up the manner of payment of this $500? A. That is what it was. . . . Q. The agreement you were going to the lawyer for, was to get the whole thing settled? A. He told me he would get the place and get settled up and he said probably both of us would have to go down and sign it. That is the very words he told us. Q. Then, there was to be a paper drawn? A. Yes, there was. I would have signed it and he would have signed it if it had been satisfactory. THE COURT: In the meantime, you wanted some-

thing to show he owed the money? THE WITNESS: It seemed to me I should have something to show he owed the money, so he wrote out the I. O. U. . . . ."

As a witness for appellants, appellant Marie Morgensen testified· to the same effect as her husband concerning the negotiations between respondent and appellants.

As above stated, appellants contend that the memorandum sued upon was without consideration and unenforcible, and the trial court, by its finding VII, *supra,* found that the memorandum was supported by a consideration, to wit, respondent's surrender of her lease and the property covered by the conditional sale contract.

■ In 17 C. J. S. 463, Contracts, § 110, the general principle is stated as follows:

"As a general rule the performance of, or promise to perform, an existing legal obligation is not a valid consideration.

"A promise to do what the promisor is already bound to do cannot be a consideration, for if a person gets nothing in return for his promise but that to which he is already legally entitled, the consideration is unreal. Therefore, as a general·rule, the performance of, or promise to perform, an existing legal obligation is not a valid consideration, except where the very existence of the duty is the subject of honest and reasonable dispute. Of course, where no legal duty exists, the principle is inapplicable."

In § 112, p. 465, appears the following:

"Generally, the promise of a person to carry out a subsisting contract is no consideration as he is doing no more than he was already obliged to do.

"The promise of a person to carry out a subsisting contract with the promisee or the performance of such contractual duty is clearly no consideration, as he is doing no more than he was already obliged to do, and hence has sustained no detriment, nor has the other party to the contract obtained any benefit. Thus, a promise to pay additional compensation for the performance by the promisee of a contract which the promisee is already under obligation to the promisor to perform is without consideration, . . . So, it has been·held that there is no consideration for a promise ׃ . . by a mortgagee in consideration of the surrender of the mortgaged premises by the mortgagor after condition broken to save the mortgagee trouble in getting possession."

In 12 Am. Jur. 582, Contracts, § 88, appears the following text:

"The performance or promise of performance of a legal duty imposed by law or arising from a contract with the other party is insufficient consideration for a promise. Many widely different acts come within this rule. A familiar example is the payment of a debt which is due and undisputed. Similarly, payment of interest which is due is insufficient consideration for a promise to forbear until further notice. Likewise, voluntary restoration of that to which one is entitled is not a sufficient consideration to support a contract. It has accordingly been decided that a contract made by the owner to obtain possession of property which is unlawfully withheld from him is without consideration and void."

In the case of *Brown v. Brew,* 99 Wash. 560, 169 Pac. 992, this court, after considering whether or not a written agreement between the parties was lacking in mutuality and unsupported by any sufficient consideration, held that there was a lack of mutuality and no consideration for the promise sought to be enforced. The case is not directly in point here, but contains some language of interest in connection with the question here presented.

In the case of *Queen City Const. Co. v. Seattle,* 3 Wn. (2d) 6, 99 P. (2d) 407, this court held that a contractor, who had agreed to construct a sewer for the city, was obligated, by the contract, to take necessary measures to keep the sewer trench dry during the construction period, and that an agreement between the contractor and the city engineer to pay the contractor for installing the required subdrain was without consideration and unenforcible.

In the case of *Erny v. Sauer,* 234 Pa. 330, 83 Atl. 205, Ann. Cas. 1913C, 1241, it was held that an oral agreement by a mortgagor with his mortgagee, the former being in default under the mortgage, by the terms of which agreement the mortgagor was to render possession of the mortgaged property and convey the same to the mortgagee, in consideration of which the mortgagor was to be released from further obligation on the mortgage, was without consideration. The mortgagor contended that a surrender of possession, and the trouble and expense to which he was put in procuring an-

other residence and moving his family thereto, coupled with the fact that, under the law, he might have maintained possession until dispossessed by legal proceedings, amounted to a sufficient consideration to support the agreement. In disposing of this question, the court said:

"But we are not impressed with the defendant's contention that the matter and acts he refers to constitute a consideration which will support the agreement. At the time the writ was issued in this case, the defendant had made default in payment of the semiannual installment of interest due on July 1, 1910 and January 1, 1911. The plaintiff therefore, on March 1, 1911, the date of the alleged oral agreement, could have proceeded by scire facias, obtained judgment, sold the premises, and collected the indebtedness due him, secured by the bond and mortgage; or, he could have entered at pleasure, taken actual possession, used the land and reaped its profits: *Tryon v. Munson,* 77 Pa. 250. If the defendant refused to give possession, he could have been ousted by an action of ejectment. Assuming that he gave possession in pursuance of the alleged parol agreement, he did nothing more than it was his duty to do or what he could have been compelled by legal process to do. No consideration therefore passed to the plaintiff when the defendant voluntarily surrendered possession of the premises to him in pursuance of the agreement: *Wimer v. Worth Township Poor Overseers,* 104 Pa. 317; *Fink v. Smith,* 170 Pa. 124; *Dunn v. Washington Building & Loan Association,* 2 Penny. 109. In the *Fink* case it is said (p. 128): 'A promise made by the owner to obtain possession of his goods, which at the time are wrongfully withheld from him, is without consideration.' Mr. Justice Trunkey delivering the opinion in the *Wimer* case says (p. 320): 'Where a legal obligation exists, a cumulative promise to perform it, unless upon a new consideration, is a nullity. * * * A promise cannot be conditioned on a promise to do a thing to which a party is already legally bound.' "

In the later case of *Warren Tank Car Co. v. Dodson,* 330 Pa. 281, 199 Atl. 139, the court cited the *Erny* case, and held, in substance, as stated in the syllabus:

"A promise to carry out a contract subsisting between the parties, or the performance of such a contractual duty, is not a consideration which will support a contract; it is only when the legal duty is doubtful or the subject of honest and

reasonable dispute, that a promise to perform it may serve as consideration for a new contractual obligation."

The supreme court of Montana, in the case of *Hewitt v. Novak*, 117 Mont. 365, 158 P. (2d) 627, said:

"The rule is well established that the promise to do what a person is already obligated by law or contract to do is not sufficient consideration for a promise made in return. [Citing authorities.]

"Pursuant to this principle of law it is well established that an agreement to surrender possession of property which the promisor is already under legal obligation to surrender is not sufficient consideration to support a promise. [Citing cases.]"

In the case of *Wendover v. Baker*, 121 Mo. 273, 25 S. W. 918, it was held, *inter alia*, that the maker of a note secured by a deed of trust

". . . had no legal right to retain possession of the premises after condition broken, hence his agreement to surrender possession was a *mere nude pact* constituting no valuable consideration."

The supreme court of Oklahoma, in the case of *Home Owners' Loan Corp. v. Thornburgh*, 187 Okla. 699, 106 P. (2d) 511, said:

"It is first contended that there is no showing of a sufficient consideration for the alleged promise of plaintiff's field agent. The plaintiff points out that the defendants were legally obligated to surrender possession of the foreclosed property anyway, since the sheriff's sale had been confirmed and was in all respects regular, and that the performance or promise of performance of a duty imposed by law or of a duty which one is already legally bound to do, forbear, or suffer, is not a sufficient consideration to support a contract, citing *Bowers v. Missouri State Life Ins. Co.*, 69 Okla. 14, 169 P. 633; *Maker v. Taft*, 41 Okla. 663, 139 P. 970, 52 L. R. A. (N.S.) 328; 6 R. C. L. 664; 34 C. J. 701. That principle is too well settled to justify extended discussion, and it would obviously be applicable to that part of defendant's promise to surrender possession of the foreclosed premises."

The cases of *Boerger v. Vandegrift*, decided by the court of civil appeals of Texas and found in 188 S. W. 948, and

*Davidson v. Old People's Mut. Ben. Soc.*, 39 Minn. 303, 39 N. W. 803, 1 L. R. A. 482, are to the same effect.

Respondent cites one decision of this court, which we shall now consider, in aid of her contention that Mr. Morgensen's memorandum was supported by a valid consideration.

The case of *Exeter Co. v. Samuel Martin, Ltd.*, 5 Wn. (2d) 244, 105 P. (2d) 83, involved questions between a landlord and a tenant, each presenting claims against the other. The tenant claimed unlawful interference with the tenancy by the landlord, who, in turn, claimed rent due from the tenant. In the course of the opinion, we said:

"The relinquishment by appellant and respondents of their mutual rights under the lease is sufficient consideration to support the agreement of surrender,"

and respondent here relies upon this principle.

Of course, the release of mutual rights under a lease, when carried into effect, as a general rule, constitutes a valid agreement. In the case cited, the tenant contended that the landlord had, by making alterations in the building, interfered with the tenant's reasonable enjoyment of the premises, the tenant claiming damages on account of the landlord's action. Each party was suing the other. The case is not in point here, where the sole question between the parties involved respondent's failure to keep the lease and contract of conditional sale in good standing, and where she desired to terminate the relationship between the parties.

Respondent also cites several of our decisions holding that a landlord cannot take forcible possession of premises, upon breach of the terms of the lease, if the tenant refuses to surrender such possession. This principle is well established, and the cases cited have no bearing upon the question here presented.

In the case at bar, it is admitted that respondent was seriously in default, both under the lease and the contract of conditional sale. According to the express terms of each of the two instruments, appellants were entitled to immediate possession of the demised premises and of the personal

property covered by the contract, upon the exercise of their option to demand such possession. This right was never questioned by respondent, and her counsel do not now contend otherwise.

In the course of the trial, and in its oral summation at the close of the evidence, the trial court expressed the view that appellants were nowise obligated to respondent, and that they had a perfect right to stand upon their demand for possession of the leased premises and the personal property. The trial court, however, was of the opinion that, notwithstanding the facts as shown by the evidence, the memorandum here relied upon by respondent was based upon a valid consideration, in that respondent might have refused to surrender the premises and property and put appellants to the expense of legal proceedings to regain possession.

Under the circumstances disclosed by the record, the contractual and legal duty rested upon respondent to surrender possession of the leased premises and personal property to appellants upon demand, respondent having breached the terms of both contracts by failing to pay, when due, rent and installments, respectively, according to the terms of the instruments.

The record discloses nothing which even suggests that respondent had any claim of any sort or description whatever against appellants, or that she believed that she had any such claim.

As shown by the evidence, respondent had practically abandoned the premises and property to appellants, with their acquiescence, prior to the morning of May 17th, although there were still a few articles of her personal property remaining on the premises.

Respondent's sole plea to appellants was that she was a widow, relying upon her own resources for her support, and had paid a considerable sum to appellants in the course of an investment which had proved unprofitable. She had attempted, without success, to find a purchaser for the business, and was convinced that no purchaser could be found.

She frankly stated that it was impossible for her to longer continue to operate the restaurant and ice cream parlor.

The trial court erred in finding that the memorandum signed by appellant J. C. Morgensen was based upon a valid, or any, consideration.

Appellants also contend that, from a preponderance of the evidence, it appears that respondent and appellants had reached no complete settlement, and that the questions pending between them awaited a final adjustment. Respondent's testimony supports this contention.

The trial court made no specific finding upon this phase of the evidence, and, in view of our holding above stated, this, and other questions argued, need not be considered.

Appellants prosecuted no appeal from the refusal of the trial court to grant the relief prayed for in their cross-complaint.

The judgment appealed from is reversed, and the cause remanded to the superior court, with the direction to dismiss the action.

MALLERY, C. J., STEINERT, ROBINSON, and JEFFERS, JJ., concur.